IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **RANDY RICHARDSON,** | * | |
|     Plaintiff, | * | Case No.: GJH-22-0487 |
| v. | * | |
| **PRINCE GEORGE'S COUNTY,** *et al.*, | * | |
|     Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Randy Richardson brings this civil action against Defendants Prince George's County (the "County"); Melinda Bolling, in her official capacity as the Director of the County's Department of Permitting, Inspections and Enforcement ("DPIE"); and Angela Alsobrooks, in her official capacity as County Executive for Prince George's County, for violations of equal protection under the Fourteenth Amendment (Count I); equal protection under Article 24 of the Maryland Declaration of Rights (Count II); substantive due process under the Fourteenth Amendment (Count III); procedural due process under the Fourteenth Amendment (Count IV); procedural due process under Article 24 of the Maryland Declaration of Rights (Count V); and negligence (Count V). ECF No. 13.

Pending before the Court is Defendants' Motion for Judgment on the Pleadings. ECF No. 25. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' motion is granted.

**I.        BACKGROUND**

1

In January 2020, Plaintiff Richardson signed a lease to open a for-profit business at a location inside the Iverson Mall (the "Branch Avenue Property").[1] ECF No. 1 ¶¶ 25–26. Plaintiff negotiated the lease with JBG SMITH Properties, the company in charge of managing properties at the Iverson Mall. *Id.* ¶ 27. At the time the lease was signed, Plaintiff alleges that he was unaware of the deficiencies with Iverson Mall's permits and that JBG SMITH did not inform him of these deficiencies. *Id.* On January 22, 2020, Plaintiff sought to have his liquor license transferred to the Branch Avenue Property, and the transfer was approved by the Board of License Commissioners. *Id.* ¶ 35. On January 27, 2020, Plaintiff met with DPIE representatives to discuss obtaining a Use & Occupancy ("U&O") permit for his business. *Id.* ¶ 36. Plaintiff alleges that he was informed by DPIE about permitting issues at Iverson Mall and that DPIE would need to resolve those issues before granting Plaintiff a U&O permit. *Id.* Plaintiff alleges that he was told the deficiencies would be resolved in short order. *Id.*

On January 29, 2020, Plaintiff, in reliance on the representations of DPIE representatives, filed for an initial non-load bearing wall permit for the Branch Avenue Property. *Id.* ¶ 37. On February 11, 2020, Plaintiff again met with DPIE officials, who reiterated that the issues with Iverson Mall's permitting would need to be resolved before he could be issued a U&O permit, and that those issues would be addressed in short order. *Id.* ¶ 38. Plaintiff alleges that he sought to obtain more information at the meeting about the nature of the deficiencies with the Iverson Mall permits, along with an explanation for why there were other businesses operating at the mall—and new businesses opening—at the time of these purported deficiencies. *Id.* ¶¶ 39–40. On April 17, 2020, DPIE issued Plaintiff an electrical permit for the Branch Avenue Property. *Id.* ¶ 41. Plaintiff asserts that he contacted DPIE "on several different occasions" regarding the

---

[1] The address for the property is 3701 Branch Avenue, Suite 1000, Temple Hills, Maryland 20748.

status of his situation between April 2020 and February 2021. *Id.* ¶ 42. DPIE representatives reiterated the same information to Plaintiff as before. *Id.* On February 24, 2021, Plaintiff filed a second non-load bearing wall permit application after being told that the first application had been lost. *Id.* ¶ 44.

Plaintiff alleges that he then faced a series of targeted and "ill-motivated" inspections of the Branch Avenue Property. *Id.* ¶ 45. Those inspections occurred on February 26, 2021, May 21, 2021, and September 24, 2021, and led to $9,500 in fines. *Id.* ¶¶ 46, 52–55. Further, in February or March 2021, a business called Shoppers World opened in the space directly above the Branch Avenue Property. *Id.* ¶¶ 47–48.

On March 2, 2021, Defendant Bolling, Director of DPIE, sent Plaintiff an email acknowledging the issues with the Iverson Mall and seeking to schedule a meeting with Plaintiff "to talk about potential long-term solutions." *Id.* ¶ 50. On May 3, 2021, Plaintiff met with Prince George's County Council Chair Calvin Hawkins II about the problems he was having with DPIE. *Id.* ¶ 51. Hawkins said he would immediately raise the issues with Defendant Alsobrooks. *Id.* On September 24, 2021, Molly Byron, Director of Government Accountability for the Office of the County Executive, called Plaintiff and purportedly acknowledged the targeted enforcement actions against him and apologized for the actions taken against him. *Id.* ¶ 56. After that time, Plaintiff alleges that DPIE ceased all enforcement actions against him. *Id.* ¶ 57. In October 2021, Plaintiff met with several representatives from DPIE, the Office of the County Executive, and the County Fire Department to discuss the issues preventing Plaintiff from obtaining a U&O permit. *Id.* ¶ 58. DPIE then removed the corrective orders from the Branch Avenue Property. *Id.* ¶ 59. On or around October 27, 2021, Jared McCarthy, Deputy Chief Administrative Officer for Government Operations for the County, met with Plaintiff to discuss the possibility of settling

the matter, because the Iverson Mall was preparing for a sale. *Id.* ¶ 60. On November 1, 2021, Plaintiff met with Joy Russell, Chief of Staff to the County Executive, who purportedly told Plaintiff that the County would "make him whole" for damages he sustained due to the permitting issues. *Id.* ¶ 61. On January 14, 2022, Prince George's County offered $330,000 to Plaintiff to resolve the matter. *Id.* ¶ 62. Plaintiff declined. *Id.* Plaintiff does not allege that he ever formally submitted an application for the U&O permit.

On March 1, 2022, Plaintiff filed his Complaint in this Court. ECF No. 1. On April 7, 2022, Defendants filed their Answer.[2] ECF No. 18. On July 26, 2022, Defendants filed a Motion for Judgment on the Pleadings. ECF No. 25. Plaintiff responded, ECF No. 28, and Defendants replied, ECF No. 30.[3]

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In evaluating a Rule 12(c) motion, courts apply "the same standard as motions brought under Rule 12(b)(6)." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts will dismiss complaints under Rule 12(c) if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his

---

[2] The Court will deny Plaintiff's Motion for Default, ECF No. 12, pursuant to the Case Management Order of Magistrate Judge Charles B. Day, ECF No. 4.
[3] Defendants' Consent Motion for Extension of Time, ECF No. 29, is granted.

claim entitling him to relief." *Edwards*, 178 F.3d at 244. The court's role is to test "the sufficiency of the complaint," and not to "resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). As such, the Court will assume all well-pleaded factual allegations in the complaint to be true. *See Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016).

**III.    DISCUSSION**

Defendants argue that Richardson cannot establish that an injury has occurred, and thus all of his claims are deficient, because he has not formally applied for, nor been denied, a U&O permit.[4] ECF No. 25-1 at 11–14. Defendants argue that Plaintiff's purported injury is predicated on denial of the permit, and thus is premature. *Id.* at 11.

Plaintiff responds that his claims are appropriate because applying for a permit would have been futile based on his conversations with DPIE representatives. ECF No. 28 at 11–12.

Article III standing requires that a plaintiff establish an injury-in-fact, causation, and redressability. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). To satisfy the injury-in-fact prong, a plaintiff bears the burden of showing he suffered a concrete and particularized invasion of a legally protected interest that is actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "While it is true that threatened rather than actual injury can satisfy Article III standing requirements, not all threatened injuries constitute an injury-in-fact." *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) (quoting *Beck*, 848 F.3d at 271) (cleaned up). "[A]n injury-in-fact must be concrete in both a qualitative and temporal sense," *Beck*, 848 F.3d at 271 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)), and there must be a "realistic danger of sustaining a direct injury," *Peterson v. Nat'l Telecoms. & Info. Admin.*, 478 F.3d 626,

---

[4] Because the Court finds in favor of Defendants on this issue, the Court will not address arguments raised by Defendants regarding the individual Defendants or the negligence claim.

632 (4th Cir. 2007) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The injury may not be "too speculative for Article III purposes." *Lujan*, 504 U.S. at 564 n.2.

Related to the injury-in-fact analysis is the issue of ripeness. *See* Charles Alan Wright & Arthur R. Miller, 13B *Federal Practice and Procedure* § 3531.12 (3d ed. Apr. 2022) ("Ripeness and mootness easily could be seen as the time dimensions of standing."). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)). To determine ripeness, courts "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'" *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quoting *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (citing *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).

At the same time, courts do not require plaintiffs to "undertake futile exercises in order to establish ripeness." *Hamilton v. Pallozzi*, 848 F.3d 614, 621 (4th Cir. 2017) (collecting cases). Courts have repeatedly found that filing an application for a permit, license, or other such benefit is futile—and thus a claim is ripe—where a plaintiff is clearly barred from accessing the benefit in question. Thus, for instance, a plaintiff may establish futility by making a "substantial showing" that "any attempt to apply for a permit … would be futile." *Id.* at 621. In such a circumstance, any attempt to obtain the benefit in question "would serve no purpose." *Sammon v. New Jersey Bd. of Med. Examiners*, 66 F.3d 639, 643 (3d Cir. 1995) (refusing to require

"aspiring midwives" to go through 1800 hours of training before challenging the training requirement, where the court could find "no indication" that plaintiffs would be able to obtain a license or physician's indorsement without the instruction).

In *Hamilton*, the plaintiff, a convicted felon, sought to overturn a law that disqualified him from obtaining a handgun in Maryland unless he obtained a full pardon from the Governor of Virginia, where he had been convicted. 848 F.3d at 619. The Fourth Circuit held that the plaintiff's efforts to obtain a handgun were futile where the plaintiff had "been informed by no less than an Assistant Attorney General of Maryland" that the state would not act "unless and until" he obtained a pardon. *Id.* at 621.

The futility doctrine does not apply, however, where seeking the benefit represents mere uncertainty or even what may be perceived as long odds. *See United States v. Decastro,* 682 F.3d 160, 164 (2d Cir. 2012). In *Decastro*, a plaintiff's claims were dismissed as futile where he "did not submit an application" for a handgun license because "he was told by an NYPD desk officer that there was 'no way' his application would be approved." *Id.* at 161, 164; *see also Doe*, 713 F.3d at 757 (finding plaintiff's claims were not ripe where she failed to petition state authorities for access to certain public properties under a sex-offender statute, even though such petitions were expressly permitted under the statute). Indeed, generally requiring litigants to demonstrate an injury occurred "prevent[s] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also ... protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967)).

Here, Plaintiff appears to concede that he did not file an application for a U&O permit with DPIE.[5] ECF No. 28 at 10–11. Nevertheless, he alleges that he was told repeatedly that his U&O permit would not be approved until Iverson Mall's permit issues were rectified. ECF No. 1 ¶¶ 36, 38, 42. This information came from unspecified "DPIE representatives," who purportedly told Plaintiff, on at least one occasion, that information about the issues with the Iverson Mall permits was "above their paygrades," and who were otherwise unable or not authorized to answer his questions. *See, e.g., id.* ¶¶ 40, 49. Further, the Court notes that Defendant Bolling, Director of DPIE, sent Plaintiff an email on March 2, 2021, asking to meet with him to "talk about potential long-term solutions." *Id.* ¶ 50. This was amongst several subsequent conversations and/or invitations for conversations that Plaintiff had with senior County officials between March 2021 and January 2022, regarding the U&O permit and the state of his business. *Id.* ¶¶ 50–51, 56–62. Based on the allegations as presented, specifically the fact that Plaintiff never applied for nor was denied a permit, the Court cannot conclude that "the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. Because Plaintiff's allegations do not demonstrate that his efforts to obtain a permit were futile, the claims as alleged are "too speculative for Article III purposes." *Lujan*, 504 U.S. at 564 n.2.

Accordingly, the Court will enter judgment in favor of Defendants on all claims.

---

[5] Defendants with their Motion submitted an Affidavit for Bellur Ravishankar, Associate Director of DPIE's Permitting and Licensing/Building Plan Review Divisions. ECF No. 25-2. Ravishankar attests that Plaintiff has not filed a U&O permit, according to DPIE's electronic records. *Id.* at 1. Plaintiff asks the Court not to consider the Affidavit because it is not integral to the Complaint. ECF No. 28 at 4. However, "[j]usticiability is an issue of subject-matter jurisdiction." *Hamilton*, 848 F.3d at 619. Courts may consider on a motion to dismiss, and thus on a motion for judgment on the pleadings, "evidence beyond the complaint and its integral documents when considering a factual challenge to subject-matter jurisdiction … without converting the motion into one for summary judgment." *Id.* at 621 n.3 (citing *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted. A separate Order follows.


Date: <u>January  31, 2023</u>　　　　　　　　　　　　　  __/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge